```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x

JUAN RODRIGUEZ,                           02 Civ. 8064 (MGC)
19848-050

JOSE MARTINEZ
19912-050                                 02 Civ. 8065 (MGC)

            Petitioners,

                                                    OPINION

      - against -

UNITED STATES OF AMERICA

            Respondent.

---------------------------------x
```

**CEDARBAUM, J.**

Petitioners move under Fed. R. Civ. P. 60(b)(6) for relief from a judgment denying, as time-barred, their initial petition for a writ of habeas corpus. Petitioners maintain that the limitations period should have been tolled because the conduct of their lawyer prevented them from filing a timely petition. Because the underlying habeas corpus petition has no merit, petitioners' motion is denied.

BACKGROUND

According to the evidence submitted by the government, Juan Rodriguez was the leader of a drug trafficking organization, and Jose Martinez was a member of Rodriguez's organization. The evidence at trial showed that, in order

1

to avoid paying a drug related debt Rodriguez owed to Jose Valencia, petitioners attempted to use hired professionals to kill Valencia and Freddy Sanchez, one of Valencia's associates.  When the hitmen failed to carry out the killings, petitioners personally shot the two men.

Petitioners were each charged with one count of conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5), two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1), one count of using a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c), and one count of transporting a firearm in interstate commerce while under indictment in violation of 18 U.S.C. § 922(n).  All the charges resulted from the August 22, 1996 murders of Valencia and Sanchez.

The jury found petitioners guilty on all five counts. After trial, petitioners made a motion for a new trial pursuant to Fed. R. Civ. P. 33.  That motion was denied. Petitioners were sentenced to life in prison for the counts related to conspiracy, murder, and interstate transportation of a firearm.  Additionally, they were sentenced to a mandatory five-year, consecutive prison term for the use of a firearm in connection with a crime of violence.  The Second Circuit affirmed the convictions on June 22, 1999.

See <u>United States v. Rodriguez</u>, 182 F.3d 902 (2d Cir. 1999). The mandate issued on July 22, 1999.

Although petitioners were aware of the one year limitations period for filing a petition for a writ of habeas corpus under 28 U.S.C. § 2255, they did not submit such a petition until October 2002 (the "2002 petition"). Section 2255 states that the one year period begins to run from:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioners did not assert that they were prevented from filing by governmental action, that they relied upon a new right made retroactively applicable to cases on collateral review, or that their claim was supported by newly discovered evidence. Therefore, petitioners were required to file their petition within one year from the date that their convictions became final. Petitioners'

3

conviction became final on September 20, 1999, a date 90 days after the Second Circuit affirmed their convictions. Clay v. United States, 537 U.S. 522, 525 (2003). Their 2002 petition was filed more than two years after the statute of limitations had barred their claim. Therefore, on June 2, 2003, the petition was dismissed.

The dismissal of a petition under 28 U.S.C. § 2255 as time-barred is considered a decision on the merits. Villanueva v. United States, 346 F.3d 55, 60 (2d Cir. 2003). Although petitions which have been decided on the merits cannot be amended or expanded, petitioners submitted an "Amendment to the Filed Petition" in May 2004 and a "Supplement to the Amended Petition for Writ of Habeas Corpus" in August 2004. Other submissions were sent in September 2004, February 2005, and June 2005. The submissions received subsequent to the June 2, 2003 denial of the 2002 petition raised substantive challenges to their convictions. The new challenges were not raised in and did not relate back to the 2002 habeas corpus petition. Under 28 U.S.C. § 2255, which incorporates 28 U.S.C. § 2244(b)(3), the Second Circuit must authorize all second or successive habeas corpus petitions. After giving petitioners a chance to withdraw their submissions and properly submit them to

the Second Circuit for authorization, the submissions were transferred to the Second Circuit on March 20, 2006.

Approximately one week later, petitioners filed a motion under Fed. R. Civ. P. 60(b) to vacate or set aside the June 2, 2003 order denying their 2002 habeas corpus petition and the March 20, 2006 order transferring their subsequent submissions to the Second Circuit.[1]  For the first time, petitioners now argue that their lawyer, Eric B. Singleton, an attorney in San Juan, Puerto Rico, prevented them from filing their 2002 petition within the statute of limitations period.  They argue that Singleton's misconduct justifies vacating the order denying their 2002 petition and equitably tolling the statute of limitations.

Petitioners assert that they retained Singleton soon after their convictions were affirmed on direct appeal, and that Singleton was paid $35,000 to prepare and file a petition under 28 U.S.C. § 2255.  They allege that Singleton told them not to worry about the statute of limitations and that the petition would be filed on time.  They further assert that Singleton continued to represent that the

---

[1] Petitioners also request that an order dated January 5, 2006 be vacated or set aside.  The petitioners are evidently referring to a January 5, 2006 notice which informed them of the opportunity to withdraw the submissions they had filed after their 2002 petition was denied.  This notice served to inform them that if they did not withdraw their submissions, the submissions would be transferred to the Second Circuit.  The notice was not an order or judgment and cannot be vacated or set aside under Fed. R. Civ. P. 60(b).

5

petition was going to be timely filed long after the statute of limitations period had elapsed.  Singleton never filed the petition on their behalf, and petitioners state that they were forced to file the petition on their own.  They claim that Singleton's abandonment and affirmative misrepresentations prevented them from filing their petition on time.

## DISCUSSION

### I. Rule 60(b)

Federal Rule of Civil Procedure 60(b) enumerates six grounds for a court to relieve a party from a final judgment or order.  Those grounds are: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or other misconduct by an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it was based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

A motion made pursuant to subsections 1, 2, and 3 of Rule 60(b) must be made within one year of the entry of the order. A motion made pursuant to subsections 4, 5, or 6 must be made within a "reasonable" time period. Motions for relief from an order on the ground of an attorney's inadequate representation have been analyzed under Rule 60(b)(6). See United States v. Cirami, 563 F.2d 26 (2d Cir. 1977) (granting motion under Rule 60(b)(6) where attorney's conduct amounted to abandonment and prevented active pursuit of the case). Therefore, petitioners' claim, filed several years after the order they seek to challenge, was required to be filed within a reasonable time.

A motion pursuant to Rule 60(b)(6) is granted only under exceptional circumstances. Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). In order to prevail on a Rule 60(b)(6) motion seeking to vacate an order denying a habeas corpus petition on the grounds of attorney misconduct, a "movant must show that his lawyer agreed to prosecute a habeas petitioner's case, abandoned it, and consequently deprived the petitioner of any opportunity to be heard at all." Harris v. United States, 367 F.3d 74, 80 (2d Cir. 2004).

A Rule 60(b)(6) motion can only be granted if it attacks the integrity of the habeas corpus proceeding and

not the underlying conviction or sentence.  <u>Id.</u> at 77.
Furthermore, the Second Circuit has repeatedly indicated
that "Rule 60(b)(6) is not a carte blanche to cast adrift
from fixed moorings and time limitations guided only by the
necessarily variant consciences of different judges.  It is
not to be used as a substitute for appeal when appeal would
have been proper."  <u>Rinieri v. News Syndicate Co.</u>, 385 F.2d
818, 822 (2d Cir. 1967); <u>Nemaizer</u>, 793 F.2d at 61.

It is questionable whether petitioners' Rule 60(b)
motion attacks the integrity of the habeas corpus
proceeding, or merely attacks the conduct of their attorney
prior to that proceeding.  In this case, where petitioners'
lawyer failed to file any petition on their behalf,
petitioners are actually seeking equitable tolling of the
statute of limitations period, a claim not raised in their
2002 petition.  Petitioners are attempting to raise a
defense to the operation of the statute of limitations on
their first habeas proceeding, a defense which was available
to them before that petition was denied, and a defense
which, if found to be valid, would have made the current
motion unnecessary.

Petitioners appear to be filing a motion under Rule
60(b) as a substitute for a timely appeal.  All of the facts
they assert in their current motion were available to them

on June 2, 2003 when their initial habeas corpus petition was denied as barred by the statute of limitations. Although their motion does not make it clear, to the extent that petitioners believe that the June 2, 2003 order should have addressed their attorney's misconduct and granted them equitable tolling of the statute of limitations, petitioners are raising an issue that they were required to raise on appeal from that order.

The reasons discussed above weigh against considering petitioners' motion on the merits.  Other factors, however, indicate that courts should not be too quick to dismiss a Rule 60(b)(6) motion on procedural grounds.  The United States Supreme Court has stated that Rule 60(b) should be available to "vacate judgments whenever such action is appropriate to accomplish justice." Klapprott v. United States, 335 U.S. 601, 615 (1949).  In the context of procedural bars to habeas corpus petitions, the Second Circuit has affirmed that, when a petitioner appears to be the victim of a fundamental miscarriage of justice, "the principles of comity and finality must yield to the imperative of federal judicial review of the conviction." Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004).

Ultimately, petitioners are attempting to use Rule 60(b) to give them another chance to properly argue

9

equitable tolling and have their 2002 petition heard on the merits.  If petitioners' allegations against their former attorney are true, petitioners' attorney actively kept them from timely filing their appeal, and they have arguably qualified for equitable tolling under Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003).  Even assuming, however, that petitioners could overcome the procedural problems associated with their motion, holding a hearing on petitioners' Rule 60(b) motion is unnecessary because, as discussed below, the 2002 petition is without merit.

## II. The 2002 Petition

In their 2002 petition, petitioners argue that their sentence violated their Sixth Amendment right to a trial by jury because a sentence of life in prison exceeded the sentence supported by the jury verdict.  Specifically, with regard to the violent crime in aid of racketeering charges, petitioners contend that the characterization of the underlying murders as first-degree murder under federal law was inconsistent with the jury's findings as to the elements of second-degree murder under New York law.[2]

---

[2] Petitioners also allege that "the district court *alone* found that petitioners' [sic] possessed a weapon, U.S.S.G. § 2D1.1(b)."  Pet. Mot. 14 (emphasis in original).  Petitioners' argument is not clear, but no plausible interpretation has any effect on their sentences.  Section

10

Petitioners were convicted of committing violent crimes in aid of racketeering, a violation of 18 U.S.C. 1959. Under the United States Sentencing Guidelines in effect at the time, petitioners' sentences were calculated by using the offense level applicable to the underlying "violent crimes" committed in aide of racketeering, which in this case were the murders of Valencia and Sanchez.  U.S. SENTENCING GUIDELINES MANUAL § 2E1.3(a)(2) (1999).  Because the murders were a violation of New York State law, the guidelines directed judges to calculate the sentence by applying the offense level associated with the most analogous federal offense.  U.S. SENTENCING GUIDELINES MANUAL § 2E1.1, app. note 2.

Although petitioners allege that they were sentenced for first degree murder, they were actually sentenced for violent crimes in aid of racketeering in which murder was the underlying "violent crime."  As part of the jury charge, jurors were instructed to consider whether the government had proved petitioners' guilt on all the elements of murder under New York law.  The instructions stated: "A person is guilty of murder ... when, with the intent to cause the

---

2D1.1 of the U.S. Sentencing Guidelines Manual refers to drug offenses which petitioners were not charged with or sentenced for.  As for the gun related offenses with which they were charged, the record shows that jury was properly charged on the counts involving weapon possession, and returned a guilty verdict on both counts.

11

death of another person, he causes the death of such person or of a third person." Charge of the Ct. 16 (quoting New York Penal Law § 125.25(1)(a), definition of murder in the second degree).

The jury returned a guilty verdict on the violent crimes in aid of racketeering charges, which included the murder charge under New York law. The most analogous federal offense for these particular state law crimes, which included a jury finding that the petitioners were guilty of conspiring to commit murder, was first degree murder, 18 U.S.C. § 1111. That determination was a legal determination made solely for the purpose of sentencing, did not involve consideration of a fact-based element of the crime, and was properly left to the discretion of the trial judge. Guzman v. United States, 277 F. Supp. 2d 255, 260 (S.D.N.Y. 2003), aff'd, 404 F.3d 139 (2d Cir. 2005), cert. denied, 126 S.Ct. 731 (2005).

First degree murder under federal law encompasses many more situations than first degree murder under New York law. While first degree murder under New York Penal Law § 125.27 requires proof of special circumstances (e.g., killing police officers/potential witnesses or use of torture), first degree murder under federal law has no similar requirements. Under federal law, any "willful, deliberate,

malicious, and premeditated killing ... is murder in the first degree," 8 U.S.C. § 1111(a), and the Second Circuit has consistently held that it is appropriate to analogize second degree murder under New York state law to federal first degree murder.  United States v. Minicone, 960 F.2d 1099, 1110 (2d Cir. 1992), cert. denied, *513 U.S. 940 (1994)* ("Although New York law would have categorized the murder ... only as second degree murder ... the district court did not err in concluding that the most analogous federal offense was first degree murder under § 1111.")

By arguing that their sentence went beyond the facts found by the jury, petitioners "ignore[] the fact that the same conduct that constitutes second-degree murder under New York Law also constitutes first-degree murder under federal law."  Guzman, 277 F. Supp. 2d at 260.  And unlike Guzman, where the court did, as part of sentencing, actually make a factual finding as to quantities of drugs involved in the offenses, id. at 262, this court made no similar factual determination.

The Guidelines provide that the base offense level for federal first-degree murder is 43.  Offense level 43 required a sentence of imprisonment for life.

### III. Ring v. Arizona

13

Because petitioners sentence was imposed following a legal, rather than factual, determination as to what constitutes an analogous federal offense, the line of cases ending with United States v. Booker, 543 U.S. 220 (2005) has no bearing on the sentences in this case.  Moreover, the Second Circuit has expressly held that Booker and its companion cases, including Ring v. Arizona, 536 U.S. 584 (2002), do not apply retroactively to cases on collateral review.  See Schriro v. Summerlin, 542 U.S. 348, 358 (2004)(holding Ring v. Arizona, 536 U.S. 584 (2002) not retroactive); Coleman v. United States, 329 F.3d 77, 90 (2d Cir. 2003), cert. denied, 540 U.S. 1061 (2003)(holding Apprendi v. New Jersey, 530 U.S. 466 (2000) not retroactive); Carmona v. United States, 390 F.3d 200, 202 (2d Cir. 2004)(holding Blakely v. Washington, 542 U.S. 296 (2004) not retroactive); see also Guzman, 404 F.3d at 141-43 (holding Booker not retroactive).

### IV. The March 20, 2006 Order

After the denial of their 2002 petition, petitioners sent several subsequent submissions attacking their convictions and sentences.  None of the claims in those submissions relates back to the 2002 petition, and the claims in those submissions would be untimely under 28

14

U.S.C. § 2255 even if the statute of limitations for the 2002 petition were tolled.  Accordingly, the March 20, 2006 order transferring the subsequent submissions to the Second Circuit for authorization was proper.

## CONCLUSION

For the foregoing reasons, petitioners' motion is denied.

SO ORDERED.

Dated:    New York, New York
          September 21, 2006

                              S/_____
                                 MIRIAM GOLDMAN CEDARBAUM
                                 United States District Judge

15